IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                Case Nos.:  3:08cr22/LAC/EMT
                                               3:14cv31/LAC/EMT

RONALD WHITE

---

**<u>REPORT AND RECOMMENDATION</u>**

This matter came before the court on Defendant Ronald White's "Motion by a Person in Federal Custody to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255" and memorandum in support thereof (ECF No. 1071).   The Government responded in opposition (ECF No. 1094), and Defendant filed a reply (ECF No. 1111).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## BACKGROUND

Defendant and thirteen others were charged in a forty-count superseding indictment with various charges related to the international distribution of child pornography via the internet (ECF No. 78 (Defendant White charged in Counts 1, 2, 39, 40)).   After a six-day jury trial during which he was represented by Clinton Couch, Esq., Defendant was convicted of engaging in a child exploitation enterprise ("CEE"), in violation of 18 U.S.C. § 2252A(g) (Count 1); conspiring to advertise, transport/ship, receive, and possess child pornography, and to obstruct an official proceeding, in violation of 18 U.S.C. §§ 371, 1512(k), 2251(e), and 2252A(b) (Count 2); receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and 2 (Count 39); and obstructing justice, in violation of 18 U.S.C. § 1512(c)(2) (Count 40).   The court sentenced Defendant to a term of life imprisonment as to Count 1, 360 months as to Count 2, and 240 months as to Counts 39 and 40, with each count to run concurrently with the others (ECF No. 627).

Defendant White and six other Defendants appealed.   The Eleventh Circuit vacated five of the Defendants' convictions for conspiracy and statutory obstruction of justice in Counts 2 and 40, and vacated Defendant White's convictions on Counts 1 and 40 and remanded his case alone for resentencing.   United States v. McGarity, 669 F.3d 1218, 1270–71 (11th Cir. 2012).   The opinion stated no fewer than five

times that the evidence against the Defendants, which included their own confessions, was nothing short of "overwhelming." *Id.* at 1242, 1243, 1246, 1263. Upon remand, the district court sentenced Defendant to a term of 240-months imprisonment on Counts 2 and 39, to run concurrently with each other (ECF No. 951). Defendant did not appeal, although he filed a motion reflecting his apparent desire to have done so (ECF Nos. 980, 981, 983). He timely filed the instant motion to vacate, raising four claims for relief (ECF Nos. 1071).

As noted by the Government, the facts of this case are set forth in the superseding indictment, the transcripts of the trial and sentencing proceedings, the Pre-Sentence Investigation Report ("PSR"), the amended judgment and statement of reasons, and the Eleventh Circuit's opinion on appeal (ECF Nos. 78, 627–628, 720–725, 761, 903, 948, 949, 951, 952; ECF No. 1094, Government Exh. A). Therefore, the undersigned will provide an abbreviated recitation of the facts here, and relay additional specific facts only as needed for resolution of the claims raised in the instant motion.

As set forth in the Eleventh Circuit's opinion, in 2005 an informant notified Constable Brenden Power of the Queensland, Australia Police Service of the existence of a computer ring of child pornography users that operated through internet newsgroups. The informant revealed which newsgroups the ring was

using, the ring's encryption method, and the informant's nickname within the ring, which enabled Constable Power to infiltrate the ring.   Constable Power began monitoring the ring, which was led by an individual known as "Yardbird," and learned of the sophisticated nature of the ring, including controls on memberships and complicated methods of communicating and posting using encryption. Members uploaded scrambled and encrypted binary files in one newsgroup, then would place a message in another newsgroup advising that the upload was there with instructions.   Other members could then download the encrypted message, decrypt and read it, and follow the instructions contained therein to locate and download the files containing child pornography.   The group masked headings when posting files and messages and frequently changed nicknames or moved to different newsgroups as a further means of avoiding detection.

After realizing that the ring was operating internationally, Constable Power traveled to the United States in 2006 where he continued his investigation in conjunction with the FBI's Innocent Images Unit.   The joint investigation continued for another year, during which time law enforcement was able to identify 22 members of the child pornography ring, 14 of whom were people of special interest. Between August 31, 2006 and December 15, 2007, law enforcement detected the upload of over 400,000 images and more than 1,000 videos by ring members.   Not

all of the images and videos portrayed child pornography, but many of them depicted the sexual abuse of minors in graphic and grotesque detail.

On February 28, 2008, law enforcement agents simultaneously executed search warrants at the residents of the Defendants in this case.   All Defendants except for one confessed his involvement with child pornography and with the child pornography ring in question.   Encryption keys of the type provided to Constable Power to access the pertinent newsgroup postings were found in the possession of all but one of the Defendants, including Defendant White.   Furthermore, after being taken into custody and housed together, six of the Defendants, including Defendant White, admitted to the others his membership in the child pornography ring. McGarity, 669 F.3d at 1229–31.

## ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   See 28 U.S.C. § 2255(a); McKay v. United States, 657

F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   Nyhuis, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."   Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."   Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."   Lynn, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause.   See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could

have been brought on direct appeal.   Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012); United States v. Campo, No. 14-15541, 2016 WL 6518520 n.5 (11th Cir. Nov. 1, 2016). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."   Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable

professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.  When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland).  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence

solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992);

Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).    "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).    The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."   United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.    A

defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015); Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. Gordon, 518 F.3d at 1301 (citing Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true would prove he is entitled to relief. *See* Hernandez v. United States, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See* Winthrop–Redin v. United States, 767 F .3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239. Finally, disputes involving purely legal issues

can be resolved by the court without a hearing.

### **Defendant's Individual Grounds for Relief**

1.  <u>Counsel's Failure to Move for Severance and Dismissal of Count Two</u>

Defendant's first claim is based on his assertion that he was not part of the conspiracy that was the target of the prosecution in this case.  Rather, he was an individual who "mistakenly placed a posting on an incorrect bulletin board that had nothing to do with any type of pornography," as a result of which he was allowed to view postings by the group (ECF No. 1071 at 6).  Defendant admits that he possessed child pornography, but he faults counsel for failing to pursue a severance in light of his purported lack of involvement in the charged conspiracy.

It is a well-settled principle that it is preferable for persons who are charged together to also be tried together, particularly in conspiracy cases.  <u>United States v. Green</u>, 818 F.3d 1258, 1282 (11th Cir. 2016) (quoting <u>United States v. Smith</u>, 918 F.2d 1551, 1559 (11th Cir. 1990)); <u>United States v. Browne</u>, 505 F.3d 1229, 1268 (11th Cir. 2007) (citing <u>Zafiro v. United States</u>, 506 U.S. 534, 537–38 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together")); <u>United States v. Hill</u>, 643 F.3d 807 (11th Cir. 2011). Cautionary instructions to the jury to consider the evidence separately, such as the

one given in this case, are presumed to guard against prejudice.   United States v. Francis, 131 F.3d 1452, 1459 (11th Cir. 1997) (quoting United States v. Gonzalez, 940 F.2d 1413, 1428 (11th Cir. 1991)); Zafiro, 506 U.S. at 539; United States v. Garcia, 405 F.3d 1260, 1273 (11th Cir. 2005).   Severance is highly disfavored. Even in a case when two co-conspirators committed murder, the Eleventh Circuit has found that severance is not warranted.   *See* United States v. Lopez, 649 F.3d 1222, 1233–36 (11th Cir. 2011).

Defendant's suggestion that there was no evidence that he was involved in the conspiracy is contradicted by the trial testimony of Special Agent Rentz, who participated in the execution of the search warrant at Defendant's residence on February 29, 2008 (ECF No. 722 at 21, 25–33).   Rentz testified that White admitted having been involved with child pornography since 1999, stated he "knew" an individual who used the name of Yardbird, and admitted he had communicated with Yardbird in various newsgroups.   White also admitted to Special Agent Rentz that he had posted text messages to, and downloaded images from, Yardbird's group, but he denied having uploaded images.   Defendant initially denied having saved any images, although approximately 5000 images were later discovered on an external hard drive.   During questioning, White told agents that he recognized the screen

names of several individuals from the group alleged to have formed part of the charged conspiracy, and he gave consent for law enforcement to assume his online identity (ECF No. 722 at 25–33).

Thus, while Defendant argues that his trial should have been severed from that of his co-defendants so as to prevent prejudicial spillover, and his counsel should have moved for such, he has not shown any constitutional basis for relief.   The jury considered the evidence against him individually, as evidenced by its specific finding that he was not guilty of one of the underlying offenses related to Count 2 (ECF No. 482 at 2).   The fact that Defendant did not participate in every aspect of the conspiracy—i.e., he did not personally upload images due to his purported lack of technical sophistication—is not tantamount to a showing of innocence.   He has not shown that counsel's performance was constitutionally deficient.

## 2.   Counsel Failed to Argue That Defendant Was Not Guilty of Count 2

Defendant's next argument is that counsel was constitutionally ineffective because he did not make the factual arguments presented in Ground One of the instant motion with respect to his innocence of Count 2.   Counsel argued during closing in part:

> [White] has never touched a child.   He has never uploaded any images. None of the postings attributed to him make any commentary about any

of the images, other than a technical question about why he couldn't download it.

(ECF No. 760 at 42).   Counsel also noted in his closing that Defendant did not have two programs on his computer, the "Blue Screen of Death" and the "Swap-N-Glue," that were possessed by all other members of the conspiracy, and finally, that there was no evidence that Defendant had advertised, shipped, or transported child pornography, such that he could not be guilty of Count 1 (*id.* at 44–45, 46–47).   As to Count 2, which required individualized findings on underlying offense conduct, counsel stated that he joined the arguments of fellow counsel and left the decision to the jury's discretion.

On appeal, the Eleventh Circuit vacated Defendant White's conviction on Count 1 for "knowingly and willfully engaging in a child exploitation enterprise," because he had not been convicted of at least two underlying CCE offenses. McGarity, 669 F.3d at 1251.   The convictions of the remaining Defendants were upheld as to Count 1.   Count 2, conspiracy to commit certain acts underlying the CCE, was a lesser included offense of Count 1.   As such, the convictions of each of the other Defendants was vacated as to Count 2 as violative of the Double Jeopardy Clause.   However, Defendant White's conviction of Count 1 had been vacated, the

Double Jeopardy Clause was not implicated, and his conviction on Count 2 was allowed to stand.   <u>McGarity</u>, 669 F.3d at 1254.

A review of the record reveals that counsel's closing statement was a fair presentation of the evidence at trial.   The evidence did not support a finding that White was completely innocent of any participation in the charged conspiracy, as he now suggests, and counsel was not constitutionally ineffective in this regard.

3.   <u>Failure to Argue That Defendant Was Not Guilty of Count 39</u>

Defendant next argues that counsel was constitutionally ineffective because he failed to argue that Defendant was not guilty of Count 39 of the Indictment. Count 39 charged a violation of 18 U.S.C. §§ 2252A(a)(2) and 2, which proscribes receipt of child pornography.   Defendant suggests that he was not guilty of that section, but rather that he was guilty of a violation of 18 U.S.C. § 2252A(a)(5), possession of child pornography, which carries a lesser penalty.

Though the possession of child pornography may be considered a lesser included offense of the receipt of child pornography, the fact that Defendant admitted the former offense does not establish his innocence of the latter.   The Eleventh Circuit has found that an indictment charging a defendant with receiving child pornography and possessing child pornography charged him with two separate

offenses.   *See* <u>United States v. Bobb</u>, 577 F.3d 1366, 1373 (11th Cir. 2009).   In this

case, the evidence at trial, including the testimony of Agent Rentz set forth above,

supported a finding that Defendant had received child pornography as part of the

involvement in the charged conspiracy.   Counsel was not constitutionally

ineffective for failing to make a meritless argument.   *See* <u>Denson v. United States</u>,

804 F.3d 1339, 1342 (11th Cir. 2015); <u>Freeman v. Att'y Gen., Fla.</u>, 536 F.3d 1225,

1233 (11th Cir. 2008); <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1066 (11th Cir. 2002);

<u>Chandler v. Moore</u>, 240 F.3d 907 (11th Cir. 2001); <u>Jackson v. Herring</u>, 42 F.3d 1350,

1359 (11th Cir. 1995).   Defendant is not entitled to relief on this ground.

   4.  <u>Failure to Object to PSR</u>

   Defendant's last ground for relief is that counsel was constitutionally

ineffective because he failed to object at sentencing to Paragraphs 74, 76(a), and 79

of the PSR.   Had counsel made appropriate objections, Defendant argues, his total

offense level would have been 27 instead of 37.

   Defendant contends that, as argued in Ground Three of the instant motion, the

appropriate base offense level for his actual conduct in this case was 18, not 22.

Therefore, he contends, Paragraph 74 should have reflected an offense level of 18

pursuant to U.S.S.G. § 2G2.2.   Just as his argument concerning the statutory

Case Nos.: 3:08cr22/LAC/EMT; 3:14cv31/LAC/EMT

provision under which he should have been convicted has no merit, his argument concerning the appropriate base offense level also is infirm.   Section 2G2.2(a)(2) of the Sentencing Guidelines provides for a base offense level of 22 for individuals convicted of trafficking in material involving the sexual exploitation of a minor; receiving, transporting, shipping, soliciting, or advertising material involving the sexual exploitation of a minor; possessing material involving the sexual exploitation of a minor with intent to traffic; and possessing material involving the sexual exploitation of a minor.   A base offense level of 18 is appropriate only for individuals convicted under certain statutory provisions not applicable here. Therefore, the base offense level of 22 was correctly applied to Defendant's offense of conviction, and counsel was not constitutionally ineffective for his failure to make this objection.   *See* Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement).

In Paragraph 76(a), Defendant received a four-point upward adjustment pursuant to U.S.S.G. § 2G2.1(b)(4) because the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence. Defendant claims that there was no evidence at trial that the Government found any

images on his computer that satisfied this standard.   Paragraph 55 of the PSR, which describes some of the images found on Defendant's computer, belies this claim. Furthermore, the Eleventh Circuit has found that this sentencing enhancement is warranted when cases involve images displaying an adult male vaginally or anally penetrating a young child because such penetration "would have to be painful."   *See* United States v. Hall, 312 F.3d 1250, 1261–63 (11th Cir. 2002); United States v. Bender, 290 F.3d 1279 (11th Cir. 2002); United States v. Caro, 309 F.3d 1348 (11th Cir. 2002).   The adjustment was appropriate, and counsel was not constitutionally ineffective for his failure to object to it.

Finally Defendant complains about the assessment of two points for obstruction of justice pursuant to U.S.S.G. § 3C1.1 in Paragraph 79 of the PSR.   He contends that this adjustment should have been removed upon resentencing after his conviction on Count 40, obstruction of justice, was overturned on appeal.   First, the court notes that the revised PSR reflects that the adjustment was warranted to reflect the conduct charged in Count 2, and not Count 40, of the Superseding Indictment (*see* ECF No. 936, PSR ¶ 79).   Second, Defendant's challenge to the application of the enhancement is procedurally barred.   On appeal, all of the Defendants challenged this two-level enhancement contending that their actions to escape

detection were not obstructive but rather simply prophylactic.   The Eleventh Circuit found that because there was "ample evidence of 'numerous obstructive actions,'" the Defendants' actions qualified for the enhancement.   <u>McGarity</u>, 669 F.3d at 1258 (quoting <u>Wayerski</u>, 624 F.3d 1342, 1352 (11th Cir. 2010)).   Defendant's dissatisfaction with this ruling does not afford him the opportunity to relitigate the issue herein.   <u>Rozier</u>, 701 F.3d at 684; <u>Nyhuis</u>, 211 F.3d at 1343.

<u>Conclusion</u>

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor has he shown that an evidentiary hearing is warranted.   Therefore Defendant's motion should be denied in its entirety.

**Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.    § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. Defendant's Motion to Vacate, Set Aside or Correct Sentence (ECF No. 1071) be **DENIED**.

2. A certificate of appealability be denied.

At Pensacola, Florida, this 16<u>th</u> day of November 2016.


<u>/s/ *Elizabeth M. Timothy*</u>

**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 3:08cr22/LAC/EMT; 3:14cv31/LAC/EMT